## THE McALLISTER NO. 55 et al.

## McALLISTER et al. v. FEDERAL SHIPBUILDING & DRY DOCK CO.

### Nos. 13071, 13780.

District Court, E. D. New York.

April 10, 1934.

J. A. Martin (of Foley & Martin), of New York City, for John E. McAllister et al., claimants-respondents and cross-libelants.

Single, Atkins & Tyler and C. E. Heckman, both of New York City, for libelant and cross-respondent.

CAMPBELL, District Judge.

The above-entitled libel and cross-libel were tried together. They were filed to recover damages sustained as a result of the parting of a sling, the equipment of the lighter McAllister 55, which was engaged in removing a condenser from the engine room of the steamship Sacandaga to the deck of the McAllister 55.

The condenser, in falling, struck the side of the steamship Sacandaga, damaging that vessel, and then fell on a new condenser on the deck of the McAllister 55, damaging the new condenser as well as the deck of the derrick lighter.

The first above-entitled suit was instituted by Federal Shipbuilding & Dry Dock Company to recover the cost of repairing the steamship Sacandaga and the new condenser. The second above-entitled suit was instituted by John E. McAllister, James P. McAllister, and William H. McAllister, as copartners doing business under the firm name and style of McAllister Lighterage Line, to recover the damages sustained by the lighter McAllister 55.

At all the times hereinafter mentioned and at the time of the trial, Federal Shipbuilding & Dry Dock Company was a New Jersey corporation.

At all the times hereinafter mentioned, John E. McAllister, James P. McAllister, and William H. McAllister were copartners doing business under the firm name and style of McAllister Lighterage Line, and the owners and operators of lighter 55, which up to the time of the happening hereinafter described was tight, staunch, strong, and in all respects seaworthy.

During the pendency of process hereunder, the lighter McAllister 55 was within this district and the jurisdiction of this court.

This court has jurisdiction and its jurisdiction is conceded.

In August, 1932, the Federal Shipbuilding & Dry Dock Company, desiring to remove a condenser from the engine room of the steamship Sacandaga and to install a new one in its place, communicated with the said McAllisters, doing business under the firm name and style of McAllister Lighterage Line, the own-

ers of the lighter McAllister 55, requesting the services of a derrick lighter capable of lifting a condenser weighing approximately 15½ tons through the hatch of a ship 45 feet above the surface of the water, and was informed that said McAllisters, doing business under the firm name and style of McAllister Lighterage Line, could furnish a vessel capable of performing such service, at the rate of $75 per day, and towing charges, to be paid by said Federal Shipbuilding & Dry Dock Company.

Subsequently and on the 5th day of August, 1932, said McAllisters, doing business under the firm name and style of McAllister Lighterage Line, furnished the lighter McAllister 55 with steam and three men, and delivered the said lighter on that day.

From that day up to and including the 10th day of August, 1932, the said lighter remained with the said Federal Shipbuilding & Dry Dock Company, the charterer, and at the expiration of the charter service the derrick lighter was towed back to the place of delivery, at the fair and reasonable rate of $100.

That no part of such charter hire and towing has been paid.

On August 8, 1932, the McAllister 55, having on its deck the new condenser to be installed in the steamship Sacandaga, was placed alongside of that steamer to enable the McAllister 55 to take the old condenser out of the steamship Sacandaga and put in the new one.

A crew of riggers employed by Federal Shipbuilding & Dry Dock Company secured from the McAllister 55 a 1⅛ inch steel wire sling, which they took down into the engine room of the S. S. Sacandaga, where they made it fast around the condenser.

The sling was 34 feet long and the circumference of the condenser was 17 feet, and the employees of Federal Shipbuilding & Dry Dock Company circled the sling around the condenser near the end of the condenser where a flange projected about 2 inches above the surface of the condenser. The sling was joined by a shackle, the pin of which was run through the eye of the sling, the other end of the sling being rove through the eye of the shackle. Chain falls were used to guide the condenser to a position under the hatch opening, after it had been lifted off its foundation about 6 feet from the hatch. The McAllister foreman in charge of the work done by the McAllister 55 was stationed on the top deck of the Sacandaga, and transmitted signals to the engineer of the McAllister 55 by means

of an electric contact bell; during the lifting of the condenser the said McAllister foreman was looking down through the engine room hatch of the Sacandaga and receiving signals by hand and mouth from the employee of the Federal Shipbuilding & Dry Dock Company, who was in the engine room. There were many starts and stops during the raising of the old condenser, but at no time while being raised from the engine room did the condenser strike or bump against anything, and from twenty minutes to one-half hour elapsed between the time the old condenser was lifted off its foundation and the time it emerged from the hatch opening at the top of the steamer's deck. The old condenser having been raised out of the ship, the boom of the McAllister 55 was raised and then swung over so as to be in position to lower the condenser to the deck of the lighter, and then the lowering was commenced and continued until the old condenser had reached a point about 14 feet above the deck of the McAllister 55, when the said McAllister's foreman gave a signal to the engineer of that lighter to stop, who answered that signal and suddenly stopped the descent of the old condenser, which descended only 6 inches from the time the engineer received the bell and the time it came to a stop, and that sudden stop caused the condenser to jerk. The sling parted near the point where it was engaged in the shackle, the old condenser fell, striking and damaging the side of the Sacandaga, the new condenser and the deck of the McAllister 55.

■ The contention of the claimant of the McAllister 55 that the employees of Federal Shipbuilding & Dry Dock Company were at fault in selecting the 1⅛ inch sling, in that it was not strong enough, is not sustained. The weight of the old condenser was 21,300 pounds, and none of claimant's witnesses fixed it at over 10½ tons. The breaking strain of the 1⅛ inch sling of the type used is rated at 56 tons. The safety factor of 5 is commonly used, and this shows the safe working load for such a sling is 11⅕ tons.

Whether the said McAllister foreman stopped the descent of the old condenser in order to allow the representative of the Federal Shipbuilding & Dry Dock Company to take charge of the placing and landing of the old condenser, on the deck of the lighter, or because of the position of the new condenser, seems to be of no moment, but the fact is clearly established that if the descent of the old condenser had not been stopped, it would have landed on the new condenser, and therefore its descent had to be stopped. In pass-

ing I might say that there is no evidence of any agreement between the said McAllister foreman and the representative of the Federal Shipbuilding & Dry Dock Company that the descent of the old condenser should be stopped, and directions as to the landing should be taken over by the latter.

The McAllisters evidently entered into a defense of the libel and filed their cross-libel on the theory of liability on the part of the Federal Shipbuilding & Dry Dock Company, because of the selection by their agents and servants of a sling too light for the work to be performed, and later advanced the theory that by reason of the way in which the sling was made fast, it came into contact with the sharp edge of a nut on the condenser, and the further theory that the method of making the sling fast at the shackle imposed too great a strain on the sling. Assuming but not finding that under the pleadings they can raise these issues, the evidence does not sustain them.

There is no evidence, only assumption, that the sling came into contact with the nut, and the evidence does not warrant a finding that the increase of strain, due to the way the sling was made fast at the shackle, was a competent producing cause of the parting of the sling; on the contrary the sling, so far as I can observe, parted where there was a straight lead and not where it was passed over the shackle.

The evidence clearly shows that the condenser did not, at any time, strike anything while being raised out of the steamship, and it did not strike anything after being raised out and before it fell.

If there was any cutting, it must have been caused by the sudden jerk when the old condenser was stopped by the engineer of the McAllister 55, on the signal of the said McAllister foreman.

■ The accident was caused by the sudden stopping of the descent of the condenser, by the said McAllister foreman, the employee of the respondents, which caused it to jerk and doubled the strain on the sling, which made the strain much greater than the safety point.

The sling was strong enough if the condenser had been properly lowered without the sudden jerk.

The sling was not cut by contacting with the head of a bolt on the condenser, and the sling did not part as a result of the way in which it was made fast at the shackle.

The lighter 55, and John E. McAllister, James P. McAllister, and William H. McAllister, doing business under the firm name and style of McAllister Lighterage Line, or those for whose actions they were responsible, were solely at fault for all the damages to vessel, condenser, and lighter, and the Federal Shipbuilding & Dry Dock Company, and those for whose actions it was responsible, did not negligently cause or contribute in any way to the damages to either vessel, condenser, or lighter, and are wholly without fault.

A decree may be entered in the first above-entitled action in favor of the libelant Federal Shipbuilding & Dry Dock Company, against lighter McAllister 55, and John E. McAllister, James P. McAllister, and William H. McAllister, copartners doing business under the firm name and style of McAllister Lighterage Line, with interest and costs and the usual order of reference.

A decree may be entered in the second above entitled action in favor of the cross-respondent Federal Shipbuilding & Dry Dock Company, against the cross-libelants John E. McAllister, James P. McAllister, and William H. McAllister, copartners doing business under the firm name and style of McAllister Lighterage Line, dismissing the first cause of action alleged in the cross-libel, with costs, and in favor of the cross-libelants John E. McAllister, James P. McAllister, and William H. McAllister, copartners doing business under the firm name and style of McAllister Lighterage Line, against the cross-respondent Federal Shipbuilding & Dry Dock Company on the second cause of action, for $475, with interest and costs and the usual order of reference.

Settle decrees on notice.

If this opinion is not considered a sufficient compliance with Rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.